IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


**RICHARD ADAMSON,**

    **Plaintiff,**

**vs.**                                                                               **CASE NO. 4:05CV23-MP/AK**

**LT. DE POORTER, et al,**

    **Defendants.**

    _____/


**SECOND REPORT AND RECOMMENDATION**

Plaintiff brings this cause pursuant to Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), alleging that Defendants violated his civil rights during an incident at a federal prison on April 25, 2002.[1]  The incident occurred during the transfer of Plaintiff from the federal facility to a state prison.  Defendants move for dismissal of the suit on grounds that Plaintiff did not exhaust administrative remedies available to him through the Bureau of Prisons' (BOP) grievance system.  (Doc. 84).  The motion was construed as a motion for summary judgment, (doc. 83), and Plaintiff has responded.  (Doc. 99).

    **I.**    **Allegations of the Third Amended Complaint (doc. 20).**

---

[1] A § 1983 suit challenges the constitutionality of the actions of state officials;  a Bivens suit challenges the constitutionality of the actions of federal officials.  See Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).  "The effect of Bivens was, in essence, to create a remedy against federal officers, acting under color of federal law, that was analogous to the section 1983 action against state officials." Dean v. Gladney, 621 F.2d 1331, 1336 (5th Cir.1980), *cert. denied,* 450 U.S. 983, 101 S.Ct. 1521, 67 L.Ed.2d 819 (1981).   Thus, courts generally apply §1983 law to Bivens cases. *E.g.,* Butz v. Economou, 438 U.S. 478, 500, 98 S.Ct. 2894, 2907, 57 L.Ed.2d 895 (1978).

Plaintiff claims that Defendant De Poorter came to his cell on April 25, 2002, and asked that he come out to participate in a proceeding on a disciplinary report concerning an attempted escape. (Doc. 20). Plaintiff refused to participate in the proceeding he calls a "shot" and his cell was then allegedly "stormed" by six unknown officers in riot gear, who threw him to the floor, handcuffed him, and carried him to an area known as "Receiving and Discharge." He claims they bruised him and re-injured his rotator cuff. While he was still restrained, he claims they cut his clothes off him, exposing his buttocks and genitals, while a female nurse watched and another female officer videotaped him. Plaintiff then claims the officers dressed him, placed him in a wheelchair, and wheeled him to a van where he was then driven to Florida State Prison in Raiford, Florida.

Plaintiff claims that the officers used excessive force against him resulting in injury and violated his Fourth Amendment rights when they illegally searched him, cut his clothes off, and allowed two female officers to see his exposed buttocks and genitals.

Plaintiff admits that he did not exhaust remedies "because federal officials refused to provide [him] with grievance forms and rules...." (Doc. 20, p.7). Plaintiff declared under penalty of perjury that he requested forms from Dan Rouse and Sheila Clark several times, and that the mail log at the institution will verify these attempts. (Doc. 20, p. 8, 10).

He seeks nominal, compensatory and punitive damages in no specific amount.

    a)    <u>Declaration of Plaintiff</u>

**No. 4:05cv23-MP/AK**

Plaintiff declares under penalty of perjury that he made several attempts to contact Warden Sheila Clark, litigation officer Dan Rouse, the Inspector General of the BOP, and the Department of Justice to obtain grievance forms, but his requests were never answered. He contends that the mail logs maintained by BOP and FDOC will show that these requests were sent and that no responses were ever mailed to him.

## II. Standard of Review

A district court should grant summary judgment when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." Nolen v. Boca Raton Community Hospital, Inc., 373 F.3d 1151, 1154 (11th Cr. 2004), *citing* Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986). All issues of material fact should be resolved in favor of the Plaintiff or non-moving party before the Court determines the legal question of whether the defendant is entitled to judgment as a matter of law under that version of the facts. Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003); Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002). The Plaintiff has the burden to come forward with evidentiary material demonstrating a genuine issue of fact for trial. Celotex, 477 U.S. at 322-23. Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof. Anderson v. Liberty Lobby, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). "For factual issues to be

**No. 4:05cv23-MP/AK**

considered genuine, they must have a real basis in the record." Mize v. Jefferson City Board of Education, 93 F.3d 739, 742 (11th Cir. 1996).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

While a moving party is not required to support his motion for summary judgment with affidavits, Celotex, supra at 323, the facts stated in uncontradicted affidavits or other evidentiary materials must be accepted as true for purposes of summary judgment.  Gauck v. Meleski, 346 F.2d 433, 436 (5th Cir. 1965).

III.   Defendants' Rule 56(e) evidence (doc. 84)

   a)   Declaration of Denise M. Gottleib

**No. 4:05cv23-MP/AK**

Ms. Gottlieb is the Administrative Remedy Clerk at the Mid-Atlantic Regional Office of the BOP and has reviewed Plaintiff's relevant records and attached them to her affidavit, which show that his last grievance was filed on June 18, 2001.

    b)    <u>Declaration of Lisa Linen</u>

Ms. Linen is the Warden's Secretary at the Federal Detention Center (FDC) in Tallahassee, Florida, and also serves as the Administrative Remedy Clerk. She has no knowledge of any requests from Plaintiff for grievance forms regarding the incident of April 25, 2002, although he had filed seven previous grievances unrelated to this incident.

    c)    <u>Declaration of Dan Rouse</u>

Mr. Rouse is a Paralegal Specialist at the FDC, and denies ever being contacted by Plaintiff for grievance forms. Mr. Rouse attests that Plaintiff contacted him three times by letter about the incident that occurred on April 25, 2002, but he never requested a form nor did he indicate an intention to seek an administrative remedy. He has attached the following copies of these letters from Plaintiff:

    1.    <u>Letter of August 2, 2004</u>

> On April 25, 2002, Lt. De Poorter came to my SHU cell and asked me to come out to investigate a shot for attempted escape. I declined, as is my right. Lt. De Poorter made several more attempts to have me leave my cell, and I declined each time.
> Lt. De Poorter then unlocked my cell, and at least six officers ran into my cell. I was dragged to the ground, handcuffed, taken to R&D, stripped naked in front of two female staff members (one of which held a camera), dressed, then put in a wheelchair and rolled out to a van, whereupon I was returned to state custody.
> It is my intent to sue for various violations of my constitutional rights. I request the following information:
> (1) the names of all officers involved in the incident.

**No. 4:05cv23-MP/AK**

(2) the name of the person who authorized Lt. De Poorter to open my cell.
(3) the name of the camera operator.
(4) does the tape still exist?
(5) the name of the female Spanish nurse who checked me for injuries.
(6) a copy of my medical records for April 25, 2002.
P.S. Out of courtesy, I am advising you I will be filing suit in Leon County State Court against Jason Stiles, Lt. De Poorter and Six unknown Officers as soon as I have copies made.
I also note you, despite your promise, never followed through on my tort claim.  We'll discuss this further when I return to the detention center.  Do you have my lock?

2.     Letter of August 3, 2004

As a courtesy, I'm sending you the first draft of the lawsuit I wrote.  It sucks, but it will give you an idea of what's coming.
Jason Stiles will not be named as a defendant-respondeat superior and all that.
You may inform the powers that be that I will waive my right to sue if they replace my watch and radio in the next 30 days.  After that, I am seeking $5,000 from each defendant, or $35,000.  You may want to read:
Cornwell v. Dahlberg, 963 F.2d 912 (6th Cir. 1992)
Hayes v. Marriott, 70 F.3d 1144 (10th Cir. 1995)
Fortner v. Thomas, 983 F.2d 1024 (11th Cir. 1993).
(complaint is attached)

3.     Letter of August 4, 2004

To Whom It May Concern:
[letter recites facts underlying claims made in present complaint and in addition states the following]:
My wristwatch, a Timex Ironman, and my digital Sony radio was lost and damaged respectively (both purchased at the detention center) and my shower slides, one pack of GPC nonfiltered cigarettes and two packs of Redman chewing tobacco was not packed and mailed with the rest of my property.
Nearly two years ago I attempted to resolve this matter with Warden Sheila Clark, but received no reply.  I write now to inform you of my intent to sue, in state court, all seven guards for a sum of $35,000 in damages and the replacement of my lost or damaged property.
However, if my watch and radio are replaced in the next 30 days, this letter shall constitute a waiver of my right to sue.

IV.   **Plaintiff's Response (doc. 99)**


**No. 4:05cv23-MP/AK**

    a)    <u>Second Affidavit of Richard Adamson (exhibit 1)</u>

Plaintiff attests that he was never trained or provided information on the BOP grievance program, but had great success with it while he was there, including one issue that resulted in a settlement. He is a paralegal with 18 years experience and was familiar with the exhaustion requirements, but his attempts to utilize the grievance process were met with no response. He contends that he was exempt from the BOP process when he became a state prisoner pursuant to 28 CFR §542.10, but he would have utilized the system anyway because of his past successes. He includes in his affidavit an offer to settle this case if BOP will return his watch and radio.

    b)    <u>Paralegal Diploma</u>

Plaintiff has completed the Paralegal Specialized Practices Program and received a diploma on November 12, 1991. Transcripts show that he made good grades.

    c)    <u>Mail logs</u>

Mail logs from BOP show that Plaintiff filed administrative requests while in the federal facility on 5/21/2001, 6/5/2001, 6/13/2001, and 6/18/2001, according to the log receipts.

Plaintiff has also included copies of Inmate Requests in the state facilities to which he was transferred, which are set forth below in chronological order:

Inmate request at Santa Rosa CI dated January 11, 2008, requests that his property from the BOP be mailed to him, he states he wrote the warden, but got no response.

**No. 4:05cv23-MP/AK**

Response: We have called the property office at the federal prison and asked that any legal work be forwarded to you.

Inmate Request at Santa Rosa CI dated January 13, 2008, seeks the mail log to show that he requested forms from the BOP, and the response shows that there were records of outgoing letters on 5/18/07, 6/28/07, 12/26/07, 1/15/07, and the notation that institution records date back to 9/16/06 through 1/15/07. "Inmate assigned to Santa Rosa since 9/16/07."

Inmate request dated January 22, 2008, requests follow up on the property from FCI in Atlanta.

Response: Mr. Ellis has asked me to respond. It has taken some time to contact and request your legal work from the federal facility. However, it has been done. We have asked that any legal work be forwarded.

Inmate request dated January 28, 2008, requests that the mailroom be alerted that property may be coming from FCI.

Response: The property office at the prison has been notified by us to forward any legal material of yours to SARCI.

Inmate Request dated February 9, 2008, asks for a copy of the mail log so the Court can examine it, but the request is denied and Plaintiff was told that the Court would have to request the form.

Inmate request dated February 18, 2008, requests again a copy of one page of a sample mail log, but the request is denied.

**No. 4:05cv23-MP/AK**

Another Inmate Request dated February 22, 2008, asks for the information on the mail log. Response: "Date, Name and Address of Outgoing mail."

d)  Letters

Plaintiff indicates that he requested copies of his prior grievances and letters requesting the grievance forms from the Defendants during discovery and has attached a copy of a letter sent "To Whom it May Concern" dated December 10, 2003, requesting return of property lost or confiscated during the attack on April 25, 2002.

**V.  Analysis**

Plaintiff concedes that he did not exhaust administrative remedies on his claims, but contends that this requirement should be waived for two reasons.[2]

First, he alleges that he attempted to exhaust remedies, but that no one would provide him the proper forms, despite his numerous requests. Although he refers to the many letters he wrote to obtain these forms, he attached no copies of these letters to his complaint (doc. 20) or his response to the motion. (Doc. 99). Although Plaintiff represents that he is a paralegal with 18 years experience and is familiar with the grievance process, having had a degree of success with it, he did not copy and save any of the letters he alleged to have written.

Plaintiff convinced the United States Court of Appeals for the Eleventh Circuit to remand this cause, in part so that he could prove he wrote these letters by obtaining in

---

[2] Plaintiff's other argument, that Defendants' motion is not properly before the Court because it contains an electronic signature, does not merit discussion since Local Rule 5.1(A)(7) specifically addresses this issue and allows for electronic filing.

**No. 4:05cv23-MP/AK**

discovery the mail logs from the state facility[3]. (See Mandate, Doc. 81). Plaintiff's argument on appeal was that if he had been on notice that the Court was construing the motion to dismiss as one for summary judgment, he would have moved the district court to compel the FDOC to produce these mail logs. (See Doc. 81, at p. 3). However, Plaintiff's motion for discovery following the Eleventh Circuit remand sought BOP documents only.[4] (Doc. 90). The only motion to compel filed by the Plaintiff concerns the requests to BOP. (Doc. 102). Defendants produced what documents they had, (doc. 97), but represented to the Court that if any of the grievances and letters sought ever existed, they had been destroyed years before according to BOP retention policies. (See Docs. 102, 104 and 105).

Given BOP's position and the chronology of events, it would seem that the mail logs that would best support Plaintiff's claims would come from Florida State Prison, since he was taken there immediately from the federal facility. Attached to Plaintiff's response to the motion for summary judgment are Inmate Requests to Santa Rosa in 2008, requesting a copy of the mail log, which was denied with the notation that the Court must contact the facility for it. Of course, the Court does not conduct discovery on its own, and Plaintiff did not seek court assistance on this issue or otherwise advise the Court that he was having difficulty in obtaining this proof. It also does not appear that

---

[3] Defendants filed a motion to dismiss for failure to exhaust, but attached evidentiary materials, which the court considered in making its initial recommendation that this cause be dismissed. (Docs. 22 and 45). Upon remand, the Court construed the motion as one for summary judgment and allowed Plaintiff discovery. (Doc. 83).

[4] He sought and obtained a copy of the BOP grievance procedure, copies of all grievances filed by Plaintiff while at BOP and letters from Plaintiff to BOP officials. (See Docs. 90 and 95).

**No. 4:05cv23-MP/AK**

Plaintiff appealed the denial of this request through the grievance system at Santa Rosa. Other state administrative requests provided by the Plaintiff are also dated in 2008 and concern property left by Plaintiff at the federal facility. (Doc. 99, Exhibits D). Santa Rosa obtained this property for him and had it mailed to the state facility. This "proof" actually weakens Plaintiff's case since it shows that Santa Rosa was in communication with the federal facility and made successful efforts to obtain his property from that facility. Thus, it follows that Plaintiff could have sought assistance from the state facility, presumably Florida State Prison in 2002, in obtaining federal forms as well.

Plaintiff admits that he is familiar with the administrative remedy system, and that he had sought administrative relief on a number of issues and filed numerous lawsuits; thus, it defies reason that he would not pursue these remedies, and particularly the proof thereof, when something as serious as a physical assault and injury occurred and the viability of his lawsuit depended on this proof. To coin a phrase used by Plaintiff, the logic in his argument "hits the iceberg of common sense, and all hands must go down with the ship." (Doc. 99, p. 6). The undersigned does not find it credible that Plaintiff sought forms from the BOP repeatedly, and when he was not provided with them, he sought no relief through the process available to him at the state facility. The district court may properly resolve this factual issue relating to exhaustion, <u>Bryant v. Rich</u>, 530 F.3d 1368, 1374 (11th Cir. 2008), and finds that the facts do not support Plaintiff's claim that he exhausted what remedies were available to him or that his actions in seeking to exhaust were sufficient as to warrant a waiver of this requirement.

**No. 4:05cv23-MP/AK**

Plaintiff's second argument, that he did not have to comply with the BOP grievance procedure because he was no longer a federal prisoner, is also not well taken.

The scope of the BOP grievance program "applies to all inmates in institutions operated by the Bureau of Prisons, to inmates designated to contract Community Corrections Centers (CCCs) under Bureau of Prisons responsibility, and to former inmates for issues that arose during their confinement. This Program does not apply to inmates confined in other non-federal facilities." 28 CFR § 542.10(b).

Plaintiff contends that the last sentence, "does not apply to inmates confined in other non-federal facilities," exempts him from the process. Defendants explain that this section precludes an inmate from seeking relief from the BOP when it has no authority to provide the relief sought, such as when a federal inmate is housed in a state prison and the alleged wrongdoing concerns actions by state prison officials. The Court has by independent research been unable to find any court interpretation of this precise section, but there is ample case law that exhaustion of available remedies applies to all prisoners in any facility, it is mandatory, and may not be waived by the Court. See Alexander v. Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998) (exhaustion requirement of 42 U.S.C. § 1997e(a) is mandatory, whether the claim is brought pursuant to § 1983 or Bivens). There is no discretion to waive this requirement or provide continuances of prisoner litigation in the event that a claim has not been exhausted prior to filing. Alexander, 159 F.3d at 1325; see also Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (holding that "the PLRA's exhaustion requirement applies to all

**No. 4:05cv23-MP/AK**

inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); Higginbottom v. Carter, 223 F.3d 1259, 1260-61 (11th Cir. 2000) (holding that an excessive force claim is subject to the exhaustion requirement). Furthermore, this Court may not consider the adequacy or futility of administrative remedies, but only the availability of such. Higginbottom, 223 F.3d at 1261, *citing* Alexander, 159 F.3d at 1323.

Based on the proof provided and Plaintiff's own admission, neither the BOP nor the state administrative process was utilized on his claim of excessive force and injury which allegedly occurred on April 25, 2002, at the federal facility. Federal law requires exhaustion of available administrative remedies, which in the present case could have been achieved by seeking assistance through the state facility to obtain forms from the BOP, if as Plaintiff alleges, he was unable to get the forms directly from the BOP.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' Motion for summary judgment (doc. 84) be **GRANTED**, and this cause be **DISMISSED** for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997(e). The order adopting this report and recommendation should direct the clerk of court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and that this counts as a "strike" within the meaning of 28 U.S.C. §1915(g).

**IN CHAMBERS** at Gainesville, Florida, this  *18th* day of August, 2008.

**No. 4:05cv23-MP/AK**

*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

**No. 4:05cv23-MP/AK**